UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT J. MARSHALL,                    )
                                       )
    Petitioner,                   )
                                       )
    vs.                           )          Case No. 4:07CV01877 ERW
                                       )
UNITED STATES OF AMERICA,              )
                                       )
    Respondent.                   )

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner's Motion to Vacate, Set Aside or

Correct Sentence [doc. #1] pursuant to 28 U.S.C. § 2255.

## I.    BACKGROUND FACTS

On or about April 23, 2005, Petitioner Robert J. Marshall applied for employment at

Vatterott College using the Social Security number of another individual, C.A.M.,[1] and presented

a Social Security card with his name but C.A.M.'s Social Security number.  After Vatterott

College hired Petitioner, Petitioner sold fake transcripts to individuals who did not meet the

academic standards for college admission.  As a result of these fraudulent admissions, these

individuals received $653,425 in grants and loans from the United States Department of

Education.

Petitioner was arrested on December 5, 2006, pursuant to a federal arrest warrant for

aggravated identity theft, at the residence of Elizabeth Perez.  During a protective sweep of the

home, agents observed computer equipment and various documents in plain view.  After obtaining

---

[1]Initials are used in place of the victim's full name, in order to protect his identity.

1

a federal search warrant, agents searched the Perez' home office and seized the equipment and documents as evidence.

## II. PROCEDURAL HISTORY

As a result of the above actions, Petitioner was charged with aggravated identity theft in violation of 18 U.S.C. § 1028A and possession and use of document making implements in violation of 18 U.S.C. § 1028(a)(5). Because Petitioner was unable to retain counsel, he was assigned Federal Public Defender Janis Good ("Ms. Good") on December 5, 2006. Petitioner waived his right to file pre-trial motions, and on February 8, 2007, pled guilty to one count aggravated theft and one count of possession and use of document making implements. As part of the plea agreement, both parties agreed to waive their right to appeal for all non-jurisdictional and sentencing issues, as long as this Court followed the plea agreement for sentencing.

Petitioner was awarded substantial benefits by entering into the Plea Agreement. By pleading guilty to Count one in criminal case number 4:06CR00730 and Count one in criminal case number 4:07CR00035, the Government agreed to dismiss at the time of sentencing Counts 2-5 in case number 4:06CR00730 and Counts 2-8 in case number 4:07CR00035. Additionally, the Government agreed not to prosecute the Petitioner for fraud from April 23, 2005 through December 5, 2006.

In the Plea agreement, Petitioner agreed to the four level increase to the base offense level, for a loss exceeding $400,000.00. There is no evidence that the loss was less than $400,000.00, and there is substantial credible evidence that the loss was greater than $600,000.00. There is very substantial credible evidence that the offense to which Petitioner entered a plea of guilty, "involved production or trafficking of any unauthorized access or counterfeit access device." In the Plea Agreement the Parties also agreed to a four level enhancement for Petitioner's role in the

offense as a leader or organizer. There is no evidence to support any other conclusion. The "Stipulation of Facts Relevant to Sentencing," all of which Petitioner embraced under oath, leave no doubt that all enhancements are supported by substantial evidence. *Plea Agreement*, 9-11.

At the Change of Plea Hearing, Petitioner took a solemn oath to tell the truth. *Change of Plea Hearing*, 2-3. He agreed that if he did not understand a question that he would ask for it to be restated or ask Ms. Good, his appointed counsel, to explain it to him. *Change of Plea Hearing*, 3. Petitioner testified that he had "[f]our years of college." *Change of Plea Hearing*, 4-5. He testified that he understood that just because he had been charged in an indictment, that of itself did not mean he was guilty of anything. *Change of Plea Hearing*, 6. The Assistant United States Attorney read the Counts of the indictment to which Petitioner pled guilty. *Change of Plea Hearing*, 6-7. Petitioner testified that he understood both counts of the indictment to which he entered pleas of guilty. *Change of Plea Hearing*, 6-9. Petitioner testified that he had no complaints against his attorney, Ms. Good, and was "entirely satisfied with her services as [his] lawyer up to that time." *Change of Plea Hearing*, 8. The Assistant United States Attorney read detailed facts into the record which support the Counts to which Petitioner entered guilty pleas, including Petitioner's confession to using the equipment to produce fraudulent documents for himself and another. Petitioner testified that he had no objection to the stated facts. *Change of Plea Hearing*, 11-13. Petitioner testified that the had an opportunity to read the Plea Agreement in its entirety, and that he had the opportunity to fully discuss it with Ms. Good before he signed it.

Petitioner testified that he know 15 levels would be added to the base offense level because the loss exceeded $400,000.00 and two levels would be added because the offense involved the possession or use of device making equipment and because the device was involved

in production of, or trafficking in, unauthorized access device or counterfeit access device. *Change of Plea Hearing*, 21. The range of punishment was fully explained to petitioner. *Change of Plea Hearing*, 22-23. He was told that the Court at sentencing would consider the United States Sentencing Guidelines, evidence each party would present, statements of counsel and of Petitioner, impact of the Parties' Plea Agreement, whether there should be departures under the guidelines and 18 U.S.C. § 3553(A) factors, setting forth the factors verbatim. Petitioner entered an unequivocal plea of guilty to both counts. *Change of Plea Hearing*, 25-26, 27.

The Pre-Sentence Report outlined in detail, the United States Sentencing Guidelines Range and the agreed enhancements from the Plea Agreement. *Pre-Sentence Report*, 2. The offense conduct was specifically set forth in detail. *Pre-Sentence Report*, 3-4. The Guidelines Total Offense Level was calculated, mimicking the agreed enhancements. *Pre-Sentence Report*, 5-6. Petitioner's lengthy criminal history was included in the Adult Criminal Convictions section; a 1989 conviction for Grand Theft Auto and Taking a Vehicle Without Owner's Consent; a 1991 conviction for Forgery and Perjury; a 1992 conviction for Grand Theft Auto; a 1992 conviction for Perjury, Forgery, and Fraudulent Use of Another's Access Card; a 1994 conviction for Forged Credit Card with Intent to Defraud; a 2001 conviction for Forgery; and a 2001 conviction for Possession of Counterfeit Securities. Petitioner exceeded the Category VI Criminal history by having 24 points.

Petitioner filed objections to the enhancements to the Base Offense Level. The Court overruled those objections, finding all applied.

Petitioner's dissatisfaction with Ms. Good resulted in substitute counsel, Mr. Welby, appearing with Petitioner at the sentencing hearing, who argued that the enhancements to the

Base Offense Level should not apply. The Court sentenced Petitioner to an Aggregate sentence in both cases of 124 months.

The Eighth Circuit Court of Appeals affirmed the sentence and dismissed Petitioner's appeal without an opinion on September 5, 2007. On November 19, 2007, Petitioner filed the pending motion to vacate, set aside, or correct sentence, asserting ineffective assistance of counsel. The motion is now fully briefed and the Court will address it at this time.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. §2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. For § 2255 petitions, "the question in each case must be . . . whether the kind of violation alleged demonstrates either 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Poor Thunder v. United States*, 810 F.2d 817, 822 (8th Cir. 1987) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The Court must hold an evidentiary hearing to consider claims in a §2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994), *see also Furnish v. United States*, 215 F.Supp.2d 1020, 1023 (E.D. Mo. 2000). Thus, a petitioner is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle [the petitioner] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (*quoting Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the

claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

A § 2255 claim may be limited by procedural default. A petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Moreover, even constitutional or jurisdictional claims not raised on direct appeal are procedurally defaulted, unless the petitioner can demonstrate either cause for the default and actual prejudice, or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (cited in *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)); *see also Larson v. United States*, 833 F.2d 758, 759 (8th Cir. 1987) (applying cause and actual prejudice requirement to § 2255 actions).

A §2255 claim, however, may be raised based on the ineffectiveness of counsel. It is well established that an ineffectiveness of counsel claim may be properly raised, other than on direct appeal, under a §2255 petition. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006). To be successful on this basis the petitioner must demonstrate: (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment[,]" and (2) "counsel's deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995).

To prove ineffective assistance under the first prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The recent Eighth Circuit case of *Marcrum v. Luebbers*, 509 F.3d 489, 503 (8th Cir. 2007), is instructive in resolving the issue of "deficiency of performance" in the *Strickland* context:

The test we apply for deficiency of performance is an objective standard of reasonableness. [*Strickland,* 466 U.S. at 688.] In *Strickland*, when the Supreme Court pronounced this standard, it expressly declined to dictate detailed rules for deciding reasonableness: "More specific guidelines are not appropriate." *Id.* However, *Strickland* gave us several guides to decision: we must assess reasonableness on all the facts of the particular case, we must view the facts as they existed at the time of counsel's conduct, and we must evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing of the state's case. *Id.* at 690.

Additionally, the second prong of the *Strickland* test requires a determination of whether counsel's deficient performance effected the result.

If viewed with appropriate deference, counsel's performance was in fact deficient, the convicted defendant will only be entitled to relief if he shows there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The reviewing court must not consider the attorney error in isolation, but instead must assess how the error fits into the big picture of what happened at trial. *Id.* at 696. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*

*Marcrum*, 509 F.3d at 503. The Court may address the two prongs of the *Strickland* test in any order, and if a petitioner fails to make a sufficient showing on one prong, the Court need not address the other. *Strickland*, 466 U.S. at 697; *Matthews v. United States*, 114 F.3d 112, 113-14 (8th Cir. 1997).

## III.    DISCUSSION

Petitioner alleges ineffective assistance of counsel on the following bases: (1) failing to investigate the case and conduct pre-trial discovery; (2) failing to file a motion to suppress evidence collected in violation of the Fourth Amendment; (3) advising Petitioner to accept the plea agreement when the facts in the plea agreement had no evidentiary basis; and (4) failing to challenge sentence enhancements in the presentence report. The Government disputes that

counsel acted unreasonably in representing Petitioner.[2]  The Court will address each of
Petitioner's arguments, in turn.

### A. Failure to Investigate

Petitioner argues that Ms. Good failed to investigate his case and conduct pre-trial
discovery, by neglecting to read Special Agent Thomas Brady's affidavit and report of
investigation and failing to file a motion to dismiss the indictment.

Under *Strickland*, Petitioner must show that counsel's conduct was objectively
unreasonable and prejudiced his defense.  466 U.S. at 687.  "Reasonable performance of counsel
includes an adequate investigation of facts, consideration of viable theories, and development of
evidence to support those theories."  *Nazarenus v. United States*, 69 F.3d 1391, 1394 (8th Cir.
1995) (internal quotation omitted).  Self-serving and conclusory statements from a petitioner "will
not suffice to command a hearing."  *Imhoff v. United States*, 2007 WL 2080433, at *1 (E.D. Mo.
Jul. 16, 2007) (quoting *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995)).

Under the second prong of *Strickland*, it is clear that Petitioner cannot establish prejudice
as a result of Ms. Good's actions.  Assuming that Petitioner is correct, that Ms. Good failed to
review the affidavit and report by Special Agent Brady, and object to its use, there is no evidence
to support the contention that he would not have been convicted if Ms. good had made such a
challenge.  Petitioner was facing a massive volume of incriminating testimony and evidence at any
trial.  As discussed below, the valid arrest of Petitioner led to the discovery of admissible

_____

[2]The Government also argues that this Court lacks jurisdiction to address Petitioner's §
2255 motion, since the Eighth Circuit already dismissed Petitioner's appeal of his sentence. Under
28 U.S.C. § 2255 and *Strickland*, however, Petitioner can collaterally attack his sentence by
asserting ineffective assistance of counsel. Therefore, the Court concludes this argument is
unsuccessful.

evidence, and statements by the Petitioner, that formed the basis of his conviction.  Therefore, Petitioner's claim of ineffective assistance of counsel on this basis is without merit.

### B. Waiver of Pre-Trial Motions

Petitioner next claims that Ms. Good provided ineffective assistance of counsel when she advised Petitioner to waive all pre-trial motions.  Specifically, Petitioner asserts that the evidence collected at the residence of Ms. Perez, a known companion of Petitioner, was collected in violation of his Fourth Amendment rights, and therefore subject to a valid motion to suppress. Without addressing the reasonableness of Ms. Good's action under the first prong of *Strickland*, the Court finds that Petitioner cannot show prejudice as a result of Ms. Good's conduct, as a motion to suppress evidence would not have been successful.

Fourth Amendment rights are personal and cannot be asserted vicariously.  *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000), *see United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).  A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched . . . has no standing to claim that they were searched or seized illegally." *Id.* A defendant has the burden to show a legitimate expectation of privacy in the area searched in order to prove standing.  *Id.*  "Whether an individual has a legitimate expectation of privacy depends upon an examination of all the facts related to the claimant's presence at the site of a search." *United States v. Kuenstler*, 325 F.3d 1015, 1020 (8th Cir. 2003).

To determine standing, the Court must consider relevant factors, including ownership, control of the area searched or item seized, historical use of the item or property, ability to regulate access, the circumstances of the search, and the objective reasonableness of the expectation of privacy in light of the facts of the case.  *Pierson*, 219 F.3d at 806.  A person may have a "legitimate expectation of privacy" in a residence searched and therefore a right to invoke

the Fourth Amendment if the individual is an overnight guest. *Minnesota v. Olson*, 495 U.S. 91, 96-100 (1990). However, if the individual is "merely present with the consent of the householder" and is "essentially present for a business transaction," he lacks any enforceable Fourth Amendment right in the premises. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). If the Court finds facts supporting both sides such that it is not "well positioned" to determine if a party had a reasonable expectation of privacy, it can examine instead the validity of the search. *See Kuenstler*, 325 F.3d at 1021.

In this case, the facts suggest that Petitioner could have been an overnight guest or a business guest. Ms. Perez was Petitioner's girlfriend, and Petitioner stated to Agent Brady that at times he resided with Ms. Perez at her residence, at other times with his wife at their residence, and on other occasions with a third unidentified female at another address. Here, officers discovered Petitioner's computer equipment and fraudulent documents at Ms. Perez' apartment. Moreover, Petitioner admitted using the computer equipment at the residence to produce a counterfeit driver's licenses, suggesting he was essentially present for a business transaction. Petitioner fails to show he had standing to challenge the search of Ms. parez' apartment.

However, it is unnecessary to conclusively decide the question of standing, because even if Petitioner could establish standing, the police officers actions were lawful in first conducting a protective sweep, and then seeking a search warrant for the residence. "Police officers who are validly in a home to execute an arrest warrant may make a limited protective sweep if they have 'a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" *United States v. Walsh*, 299 F.3d 729, 733 (8th Cir. 2002) (quoting *Maryland v. Buie*, 494 U.S. 325, 337 (1990)). After being arrested at Ms. Perez' residence pursuant to an arrest warrant, Petitioner told officers that Ms. Perez was

on the second floor of the residence. When Ms. Perez did not comply with the officers' request to come downstairs, officers acted within their authority to conduct a sweep for safety reasons.

While conducting the protective sweep, the officers observed a number of incriminating objects that were in plain view. "Police may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent." *United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). An immediately apparent incriminating character is established when police have "'probable cause to associate the property with criminal activity.'" *Banks*, 514 F.3d at 773 (quoting *United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001)). In this case, officers observed various documents and computer equipment during the protective sweep, including a photocopy of a driver's license with Petitioner's photograph but someone else's name, a computer printer and scanner, and a laminating device. Since the officers were executing a federal arrest warrant for a previous charge of aggravated identity theft, it was reasonable for them to believe the items were incriminatory.

After Ms. Perez refused to grant permission for the officers to search the residence, or seize and search the computer equipment, the officers requested and received a search warrant. A search warrant is legally sufficient if the reviewing court finds that the issuing judge had "a substantial basis for concluding that probable cause existed" to issue the warrant. *United States v. Morrison*, 2008 WL 474327, at *5 (E.D. Mo., Feb. 15, 2008). *See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The issuing judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003). Whether probable cause exists depends upon the

totality of the circumstances. *Id.* Agent Brady stated in his search warrant affidavit that Petitioner admitted to using another's identity and the computer equipment at Ms. Perez's residence to make a fraudulent driver's licenses. Moreover, the officers executing the arrest warrant had observed equipment and documents that would lead to the conclusion that a fair probability existed that evidence of a crime would be found. *See Gates*, 462 U.S. at 238. Based on these facts, there was a sufficient finding of probable cause by the issuing judge to support the issuance of the search warrant.

The Court reiterates that Petitioner must show that counsel's conduct was both unreasonable and prejudicial in filing a waiver of pre-trial motions and not moving to suppress the evidence collected. *Strickland*, 466 U.S. at 687. Assuming that counsel was unreasonable, which the Court does not find, for failing to raise a Fourth Amendment argument, the Court finds that no prejudice resulted from counsel's alleged error. A motion to suppress based on the Fourth Amendment would not have been successful, as Petitioner likely lacked standing to object to the search, and even if he had standing, the officers conducted a legal protective sweep and subsequently seized evidence pursuant to a legal search warrant.

### C. Plea Agreement

Thirdly, Petitioner challenges Ms. Good's allegedly erroneous advice to him to accept the plea agreement, arguing there was no factual basis to support each element of the crimes charged. Petitioner's counsel was not unreasonable in failing to challenge the factual basis for each element of the crime, as Petitioner admitted each of the elements before this Court in his plea agreement. The Plea Agreement stated that on April 23, 2005 the Petitioner applied for employment at Vatterott College using a social security card with his name, but the social security number of another individual. The Plea Agreement further stated that a search of Ms. Parez' residence,

pursuant to a search warrant, produced a computer, hard drives, zip drives, a scanner, a check reader, and a laminator, as well as numerous documents including state identification cards, state drivers licenses, blank social security cards, social security cards, blank I-9 cards, I-9 cards, United States military identification cards, and State of Missouri transcripts. Petitioner specifically acknowledged that he sold transcripts to individuals who needed proof that they possessed a high school general equivalency degree. Petitioner further acknowledged that those individuals were granted approximately $653,425.00 in Pell Grants and federally insured loans, as a result of the fraudulent transcripts.

Petitioner had a right to demand that the Prosecution prove its case at trial, and refuse to plead guilty. Petitioner did not avail himself of this right, but rather plead guilty before this Court to all of the elements of the crimes charged. The Petitioner agreed to and signed the Plea Agreement which was entered into the record at his plea hearing on February 8, 2007. Counsel's advice that Petitioner plead guilty was not unreasonable considering the incriminating statements and physical evidence supporting the crimes charged. In return for Petitioner's guilty plea, the government dropped many of the charges in the indictment. Furthermore, a petitioner's representations at a hearing "carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Pennington v. United States*, 374 F.Supp.2d 813, 815 (E. D. Mo. 2005). Petitioner knew the contents of the Plea Agreement, stated that he understood the rights guaranteed to him, that he was giving up those rights by signing the Plea Agreement, and further stated that he did not have any complaints against his counsel, Ms Good, at the Change of Plea Hearing. Later, he said he had objections and substitute counsel was appointed, Mr. Welby.

Based on the facts in the record strongly supporting Petitioner's guilt, the Court concludes that counsel's recommendation was not unreasonable. Petitioner had acknowledged the large amount of Pell Grants and student loans that had been issued as a result of Petitioner's conduct, as well as the number of documents and other items found in Ms. Parez' residence that supported these conclusions. Therefore, Petitioner's claim on this basis is without merit.

### D. Failure to Challenge Presentence Report

Lastly, Petitioner claims that counsel was ineffective for failing to challenge the fourteen level sentence enhancement for a loss amount exceeding $400,000 and the four level sentence enhancement for being an organizer or leader of criminal activity, when neither had a factual basis. The Court again turns directly to the second prong of *Strickland* to determine whether counsel's allegedly unreasonable conduct prejudiced the defense.[3]

A sentencing court is allowed to find sentence-enhancing facts by a preponderance of the evidence. *Gonzalez v. United States*, 2008 WL 880002 at *2 (E.D. Mo. Mar. 28, 2008) (quoting *United States v. Morales*, 445 F.3d 1081, 1085 (8th Cir. 2006)). Petitioner has provided no evidence to demonstrate lack of a factual basis, and the record of the case reflects this Court's factual findings to support the enhancements. After hearing Petitioner's objections, this Court overruled them and found that the loss amount exceeded $400,000 and that Petitioner was an organizer or leader of criminal activity which was "otherwise excessive" because it "involved many, many individuals" over a long period of time, as well as a lot of money. *Sentencing*

_____

[3]Mr. Welby, Petitioner's replacement counsel, objected to the sentence enhancements at the sentencing hearing, however, he specifically stated that he was not challenging the facts, but the legal application. Sentencing Hearing Transcript, 5.

*Hearing Transcript*, 26. In addition, the Court added the two point enhancement under U.S.S.G.

2B1.1(b)(10)(A), to which Petitioner agreed at the Change of Plea Hearing.

The Court acted within it's authority in making factual findings, based on the record

before it, that the sentence enhancements were proper. Petitioner had already agreed to these

enhancements, therefore, any challenge by counsel to the factual basis would have been

unsuccessful. Petitioner has not satisfied the second prong of *Strickland*, and therefore his claim

on this bases is denied.

## IV.     CONCLUSION

Petitioner's claim of ineffective assistance of counsel is clearly refuted by the record in this

case, and therefore an evidentiary hearing is not required. Petitioner cannot show any prejudice

resulting from counsel's conduct, nor has he shown that counsel acted unreasonably. Therefore,

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is

denied. Also, the Court will not issue a certificate of appealability in this case, as Petitioner has

not made a substantial showing that any of the issues presented are debatable among reasonable

jurists. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial

showing" is a showing that the "issues are debatable among reasonable jurists, a court could

resolve the issues differently, or the issues deserve further proceedings").

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Petitioner's 2255 Petition.

Dated this <u>14th</u> day of <u>July</u>, 2008.


_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE